**Curtis BATRO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0506–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 22, 1982.

E. Neil Lane, Houston, for appellant.
Larry P. Urquhart, Houston, for appellee.

Before DYESS, SMITH and BASS, JJ.

DYESS, Justice.

The appellant was convicted of aggravated robbery. Punishment, enhanced by two prior felony convictions, was assessed at life imprisonment in the Department of Corrections.

The appellant is before this court on two grounds of error. By his first ground of error he asserts that the evidence was insufficient to establish that the knife exhibited by him was a deadly weapon. In his second ground of error the appellant complains that the indictment should have been quashed in accordance with his motion because the complainant's surname was misspelled. We affirm.

A brief statement of the factual background includes the following:

The appellant, having entered a Weingarten's store in Harris County, was spotted by a Weingarten employee in the act of secreting meat from the meat counter into a paper bag. This suspicious circumstance was brought to the attention of Mr. Ferrel, the store manager, who began watching the appellant. Shortly thereafter the appellant walked around the check-out counter toward the door while carrying an unmarked paper bag. Ferrel, becoming certain that the appellant was not going to pay for the meat, shouted to him to stop. When the appellant refused to heed the store manager's cries, the latter began to follow the appellant out of the store.

The appellant walked to his car parked in front of the store and opened the front door on the driver's side. As he did so, he turned on Ferrel, who was then near the rear of the car, whipped out a knife, and challenged Ferrel to "Come on." In the meantime, appellant had dropped the bag and Ferrel saw several packages of Weingarten meat fall to the ground. Deciding to avoid entanglement with someone holding a six-inch blade knife, Ferrel retreated, looked down to check the license plate, and went inside the store where he called the police. The appellant was arrested in his apartment near the store.

Mr. Ferrel testified that he was in fear of imminent bodily injury or death. The arresting police officer testified that the knife was capable, in its manner and use, of being a deadly weapon according to its manufacture and use. One of the officers noted that the knife was a "locked-blade" type which is often used to cause serious injury or death.

Section § 1.07 of the Penal Code directs us in its definition of "deadly weapon" as follows:

(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Since a knife is not a deadly weapon per se, *Harris v. State*, 562 S.W.2d 463, 466 (Tex.Cr.App.1978), the State must prove in each case that the particular knife involved is capable of inflicting deadly wounds. There are several factors which a court may consider in determining whether a particular knife is a deadly weapon. They include, 1) injuries; 2) the manner in which the knife was used; 3) the length of the blade; 4) threats. *Alvarez v. State*, 566 S.W.2d 612 (Tex.Cr.App.1978); *Hart v. State*, 581 S.W.2d 675 (Tex.Cr.App.1979).

When, as in the instant case, serious bodily injury has not been shown, the court must discern the manner of the knife's use or its intended use, its size and shape, and its capacity to produce death or serious bodily injury in determining whether a knife was a deadly weapon. *Harris*, supra. We also note that the absence of injuries does not preclude a finding that a particular knife is a deadly weapon. *Denham v. State*, 574 S.W.2d 129 (Tex.Cr.App. 1978).

In this case the complainant testified concerning the length of the blade and to his fear that his life was in danger; in addition, two police officers, one with seventeen years' experience and the other with six years' experience, testified that the knife, which was six inches long, was capable of causing serious bodily injury. One of the officers observed the locked-blade feature of the knife and testified that this type is often used to cause serious injury or death.

While the appellant cites several cases which he contends are in support of his claim that the knife was not shown to be deadly, all of them are distinguishable from the case at bar. *Davidson v. State*, 602 S.W.2d 272 (Tex.Cr.App.1980), is one of the cited cases and, while there are some remarkable similarities in the manner in which robberies were conducted, the cases are quite different in several important aspects. In *Davidson*, the store employees testified that the knife blade was 2½–3 inches long; however, the knife was never found and was not in evidence. While an employee testified that he had been in fear of bodily injury or death, he admitted further that this was because a friend of his had been hurt previously in a parking lot with a screw driver-wielding assailant. The court also noted in its opinion that the State did not establish possible potential harm through hypothetical questions to an expert on weapons. *Id.* at 274.

Although expert testimony is no longer required to establish the character of a weapon and, although it is not the only way to establish that a knife is a deadly weapon, as the court remarked in *Davidson*, supra, "... it may still be particularly useful in supplementing meager evidence on the issue in order to meet the sufficiency requirement." *Id.*, at 273.

We overrule the appellant's first ground of error.

By his second ground of error, the appellant asserts that there is a factual variance between the proof at trial of the complainant's name and the spelling of the name in the indictment. While the complainant testified that his name was "Ferrel", spelled with only one "l", the indictment listed the appellant's name as "Ferrell". We recognize and hold to the rule that, if the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, the variance and misspelling are immaterial. *Jenke v. State*, 487 S.W.2d 347 (Tex. Cr.App.1972). The spelling of the complainant's name with one or two "l's" does not change the sound of the word. The name sounds the same either way and it is difficult indeed, if not impossible, to distinguish between them when pronounced. They were of like sound and are therefore *idem sonans*. *Smith v. State*, 468 S.W.2d 824 (Tex.Cr.App.1971). In *Vaughn v. State*, 608 S.W.2d 237 (Tex.Cr.App.1980), the Court of Criminal Appeals decided that "Sheila" and "Shelia" are *idem sonantes*. There is even less difference in spelling in the present case, and even slighter chance that the name would be pronounced differently because of the variance in spelling. Finding

the appellant's second ground of error without merit, we overrule same.

We affirm the judgment of the trial court.